**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| G.W. and K.W., individually and on behalf of M.W., a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>RINGWOOD BOARD OF EDUCATION,<br><br>Defendants. | Civil Action No. 22-cv-03063-JKS-JSA<br><br>**OPINION**<br><br>May 14, 2024 |

**SEMPER**, District Judge.

Currently before the Court is Defendant Ringwood Board of Education's ("Defendant" or "Ringwood") Motion for Summary Judgment on the administrative record. (ECF 53, 54.) M.W., G.W., and K.W. ("Plaintiffs"), did not oppose the Motion despite numerous orders from the Court instructing Plaintiffs to respond to Defendant's Motion.[1] The Motion was decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2] For the

---

[1] Defendant's motion for summary judgment was filed on September 27, 2023. (ECF 53, 54.) Plaintiffs failed to file an opposition by the due date of November 14, 2023. (ECF 61.) The Honorable Evelyn Padin, U.S.D.J., instructed Plaintiffs to file their opposition by December 19, 2023. (ECF 61.) Plaintiffs again failed to file an opposition. Judge Padin instructed Plaintiffs to file an opposition by January 12, 2024. (ECF 62.) Plaintiffs again failed to file an opposition. Judge Padin instructed Plaintiffs to file an opposition by February 2, 2024 "or the Motion will be treated as unopposed. No further extensions will be granted to Plaintiffs." (ECF 63.) Plaintiffs again failed to file. On February 8, 2024, this case was reassigned to the undersigned. (ECF 64.) On March 25, 2024, Plaintiff K.W. requested two weeks to file an opposition to the Motion. (ECF 65.) Two weeks later (with no opposition filed), on April 8, 2024, the undersigned denied Plaintiff's request pursuant to Judge Padin's previous orders. (ECF 66.) Because Plaintiffs have failed to address Defendant's assertions of fact after the Court gave Plaintiffs numerous opportunities to do so, the Court will grant Defendant's Motion for Summary Judgment if the Motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to summary judgment. *See* Fed. R. Civ. P. 56(e)(3); *see also Mendy v. Home Depot U.S.A., Inc.*, No. 19-00135, 2021 WL 2821189, *2 (D.N.J. July 6, 2021) (noting courts must still consider whether the party is entitled to judgment as a matter of law).

[2] Defendant's brief will be referred to a "Def. Br." (ECF 54.) Defendant's Statement of Material Facts will be referred to as "SMF." (ECF 53-1.) Administrative Law Judge Elissa Mizzone Testa's Final Decision will be referred to as "ALJ Final Decision." (ECF 1-2.)

1

reasons set forth below, the Defendant's Motion is **GRANTED**, and the ALJ's Final Decision is **AFFIRMED**.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**[3]

M.W. is a child with a disability who is eligible for special education and related services pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. (SMF ¶ 1.) G.W. and K.W. are M.W.'s parents. (*Id.* ¶ 2.) At all relevant times, Defendant was responsible for providing a free, appropriate, public education ("FAPE") to M.W. (*Id.* ¶ 3.)

On approximately October 4, 2021, the parties agreed to an individualized educational program for M.W. (the "October 4th IEP"). (*Id.* ¶ 4.) On October 25, 2021, the parties convened an IEP meeting, which resulted in Defendant proposing a new IEP ("Proposed IEP") for the 2021-2022 school year. (*Id.* ¶ 5.) The October 4th IEP and the Proposed IEP included the same educational placement and related services. (*Id.* ¶ 6.) The IEPs shared many of the same accommodations and modifications. (*Id.*) However, the Proposed IEP included an additional goal regarding peer interaction. (*Id.* ¶ 7.) To address this goal, a "teacher created checklist" would be used to monitor the number of times M.W. initiated conversations with his peers. (*Id.*) Plaintiffs did not consent to implementing the Proposed IEP. (*Id.*) From October 4, 2021, through the dates of the hearing before ALJ Elissa Mizzone Testa, the October 4th IEP was the operative IEP. (*Id.* ¶ 8.)

The October 4th IEP provided for placement in an inclusion classroom for Language Arts, Math, Science, and Social Studies. (*Id.* ¶ 9.) Jamie Fritts was M.W.'s special education teacher for Math and Science. (*Id.* ¶ 10.)  Diane Kaplan was M.W.'s special education teacher for Language Arts. (*Id.*) Eva Martin was M.W.'s special education teacher for Social Studies. (*Id.*) Each teacher

---

[3] The Motion for Summary Judgment is based on the Administrative Record. (ECF 47, 50-52.) The parties did not engage in additional discovery.

testified at the hearing that M.W. was in an inclusion classroom for their respective classes. (*Id.*) Each teacher also testified that they were familiar with the accommodations and modifications included in the October 4th IEP, which were implemented since the October 4th IEP went into effect. (*Id.* ¶ 11.) As of January 31, 2022, M.W. had a grade of "A" in Math and Science, a grade of ninety-three in Language Arts, and a grade in the nineties in Social Studies. (*Id.* ¶ 12.)

Pursuant to the October 4th IEP, a one-to-one aide was to be provided during in-person instruction and on the bus. (*Id.* ¶ 13.) Plaintiffs declined to have an aide assigned to M.W. during virtual instruction. (*Id.*) From the start of the 2021-2022 school year, a one-to-one aide was assigned to M.W. for all instructional periods. (*Id.* ¶ 14.) Each of M.W.'s special education teachers testified that he had a one-to-one aide in their classrooms. (*Id.* ¶ 15.) Janine Gribbin, the District's Director of Special Services, testified that a one-to-one bus aide had also been assigned to M.W. since the beginning of the 2021-2022 school year. (*Id.* ¶ 16.) G.W. confirmed an aide was on M.W.'s bus, but testified Defendant failed to comply with the IEP by seating M.W. with students that were not in the eighth grade. (*Id.* ¶ 17.)

To manage IEPs of classified students, Defendant utilizes Realtime, a data management system. (*Id.* ¶ 18.) Pursuant to the October 4th IEP, M.W.'s teachers only had access to certain portions of his IEP. (*Id.* ¶ 19.) Therefore, M.W.'s IEP was not posted on Realtime. (*Id.*) M.W.'s teachers were required to go to the case manager's office to view the IEP. (*Id.*) Gribbin, Fritts, and Kaplan testified that M.W.'s IEP had to be viewed from the case manager's office and was not available on Realtime. (*Id.* ¶ 20.)

On October 27, 2021, Realtime crashed throughout the state and came back online on November 1, 2021. (*Id.* ¶ 21.) On November 2, 2021, K.W. attempted to access M.W.'s October

3

4th IEP on Realtime.[4] (*Id.* ¶ 22.) Upon entering Realtime and looking for M.W.'s IEP, an IEP dated October 23, 2020 appeared; it was viewable in its entirety. (*Id.*) The October 23, 2020 IEP was different from the October 4th IEP and included the use of a "teacher created checklist." (*Id.* ¶¶ 23-24.) The checklist allowed M.W.'s teachers to record M.W.'s peer interactions throughout the day. (*Id.* ¶ 25.) Plaintiffs had objected to the use of the teacher created checklist. (*Id.* ¶ 26.) G.W. testified that he believed the checklist was nevertheless being used because M.W. asked him on several occasions why his teachers were encouraging him to interact with his peers. (*Id.* ¶ 27.) G.W. further testified that M.W. told him his teachers needed to know how to fill out a form. (*Id.*) M.W.'s special education teachers testified they did not track M.W.'s peer interactions and did not know what the teacher created checklist was. (*Id.* ¶ 28.)

On November 4, 2021, Plaintiffs filed a request for mediation with the New Jersey Department of Education's Office of Special Education Programs ("OSEP"). (Def. Br. at 1.) This request was later converted to a request for due process. (*Id.*) On December 8, 2021, based on the same allegations that appeared in their request for mediation, Plaintiffs filed a second petition for due process with OSEP. (*Id.*) The matters were consolidated. (*Id.*) On January 21, 2022, ALJ Testa limited the scope of the hearing to whether M.W.'s October 4, 2021 IEP was being implemented, and if it was not being implemented, was that failure to implement a denial of a FAPE. (*Id.*) On January 25, 2021, Plaintiffs filed an amended petition for due process in accordance with same. (*Id.* at 1-2.) A hearing was held in the Office of Administrative Law on January 31, 2022, February 3, 2022, and February 7, 2022. (*Id.* at 2.) On February 24, 2022, ALJ Testa entered a final decision and order, finding Defendant did not deny M.W. a FAPE and dismissing the petition for due

---

[4] At the ALJ hearing, "K.W. further testified that she is a High School Teacher in another District and uses the same Realtime System and was fully aware that it was a Statewide shutdown and not an intentional act by the Respondent." (ALJ Final Decision at 6.)

process. (*Id.*) On May 26, 2022, Plaintiffs filed a Complaint in the United States District Court, District of New Jersey, appealing ALJ Testa's final decision and order. (ECF 1.)[5]

In the instant Motion, Defendant seeks summary judgment and asks the Court to uphold ALJ Testa's Final Decision. The Parties have neither sought nor offered additional evidence; they agreed to rely solely on the administrative record. *See F.H. v. W. Morris Reg'l High Sch. Bd. of Educ.*, No. 19-14465, 2020 U.S. Dist. LEXIS 230053, at *4 (D.N.J. Dec. 8, 2020) ("On a motion for summary judgment, when no new evidence is presented to the district court, the motion becomes the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." (internal quotation marks omitted)).

## II.   STANDARD OF REVIEW

### A.  Review of State Administrative Decision Under the IDEA

"The standard of review under which the Court considers an appeal of a state administrative decision under the IDEA 'differs from that governing the typical review of summary judgment.'" *F.V. v. Cherry Hill Twp. Bd. of Educ.*, No. 21-18096, 2023 U.S. Dist. LEXIS 52625, at *14 (D.N.J. Mar. 28, 2023) (quoting *M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002), *aff'd*, 65 Fed. App'x. 404 (3d Cir. 2003) (internal citations and quotations omitted)).[6] In reviewing an administrative law judge's decision, a district court is tasked with

---

[5] In their Complaint, Plaintiffs allege Defendant's failure to provide M.W. with a FAPE violated Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. (Compl ¶¶ 52-61, 69-71.) Because ALJ Testa limited the issues before her, she did not address these claims. Defendant does not address these claims in its Motion for Summary Judgment. These claims likewise are not properly before this Court. Plaintiffs may only pursue claims in which they have standing in their own right. The Third Circuit has held that the right to proceed pro se does not give non-lawyer parents the right to represent their children in proceedings before a federal court. *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) ("[A] non-lawyer [parent] appearing pro se [is] not entitled to play the role of attorney for his children in federal court"); *see also Collinsgru*, 161 F.3d at 231. Although the IDEA affords parents rights that are separate and independent from their children, Section 504 and the ADA do not. *See Woodruff v. Hamilton Twp. Pub. Sch.*, 305 F. App'x 833, 836 (3d Cir. 2009). Therefore, G.W. and K.W. do not have an individual right of action to redress M.W.'s alleged injuries under Section 504 or the ADA.

[6] The IDEA provides that, when a Court reviews an administrative law judge's decision, the Court: (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and

applying a "modified de novo review," which requires it to give "due weight" and "deference" to the findings in the administrative proceedings. *E.I.H. v. Fair Lawn Bd. of Educ.*, 747 F. App'x 68, 71 (3d Cir. 2018). The purpose of the "due weight" standard is to prevent the courts from imposing their own "view of preferable educational methods upon the states." *Rowley*, 458 U.S. at 207. Further, a district court must accept the state agency's credibility determinations "unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion." *Carlisle Area Sch. v. Scott P. By & Through Bess P.*, 62 F.3d 520, 529 (3d Cir. 1995) (emphasis added).[7]

"Factual findings from the administrative proceedings are to be considered prima facie correct, and if the reviewing court does not adhere to those findings, it is obliged to explain why." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (internal quotation marks omitted). "Nonetheless, the district court's review over questions of law and the ALJ's application of legal precepts is plenary." *M.A. v. Wall Twp. Bd. of Educ.*, No. 20-05218, 2021 U.S. Dist. LEXIS 224789, at *4 (D.N.J. Nov. 22, 2021) (citing *Carlisle*, 62 F.3d at 528 n.3).

### B. Unopposed Summary Judgment Motion

Where, as here, a party fails to address another party's properly supported assertions of fact, the court may consider "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). Local Civil Rule 56.1(a) deems a movant's statement of material facts undisputed where a party does not respond or file a counterstatement. L. Civ. R. 56.1(a). A failure

---

(iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. § 1415(i)(2)(C).

[7] "[I]n this context, the word 'justify' requires that the applicable standard of review be essentially the same as that a federal appellate court applies when reviewing a trial court's findings of fact." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (citing *Shore Reg'l High School Bd. of Educ. v. P.S. ex rel P.S.*, 381 F.3d 194, 199 (3d Cir. 2004)).

to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see also Muskett v. Certegy Check Servs., Inc.*, Civ. No. 08-3975, 2010 WL 2710555, *3 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [the party's] evidence designated in or in connection with the motion entitle the [Movant] to judgment as a matter of law.'" (alterations in original) (quoting *Anchorage Assocs.*, 922 F.2d at 175)).

**III.   DISCUSSION**

The issue before ALJ Testa was whether M.W.'s October 4th IEP was being implemented, and if it was not being implemented, was that failure to implement a denial of a FAPE. ALJ Testa concluded that Defendant did not fail to implement the October 4th IEP, and M.W. was not denied a FAPE. (ALJ Decision at 16.) In their Complaint, Plaintiffs assert that "ALJ [Testa] committed reversible error by holding Respondent did fail to implement MW's IEP but the failure was *di minimis* and did not cause MW to be deprived of a free and appropriate public education." (Compl. ¶ 52.) In its Motion for Summary Judgment, Defendant argues that ALJ Testa correctly concluded that it properly implemented the October 4th IEP, and because of this implementation, M.W. made appropriate educational progress. (Def. Br. at 3.)

Whether an IEP is appropriate is a question of fact. *D.S.*, 602 F.3d at 564. Likewise, whether a school district met its FAPE obligation is a question of fact. *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009). Therefore, in reviewing the

7

administrative record, this Court gives due weight and deference to the ALJ's determination that Defendant provided M.W. with a FAPE. *See S.H. v. State–Operated Sch. Dist.*, 336 F.3d 260, 269-70 (3d Cir. 2003). This Court declines to disturb ALJ Testa's determination that Defendant implemented the October 4th IEP and provided M.W. with a FAPE.

The IDEA conditions a state's receipt of federal funds for special education programs on its implementation of "policies and procedures to ensure that . . . [a] free appropriate public education is available to all children with disabilities . . . ." 20 U.S.C. § 1412(a)(1)(A). A FAPE "'consists of educational instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to 'benefit' from the instruction.'" *Melissa S. v. Sch. Dist.*, 183 F. App'x 184, 186 (3d Cir. 2006) (quoting *W.B. v. Matula*, 67 F.3d 484, 491 (3d Cir. 1995) (quoting *Board of Education v. Rowley*, 458 U.S. 176, 188-89 (1982))). An IEP is the "primary vehicle" for implementing a FAPE. *Melissa S.*, 183 F. App'x at 186-87. An IEP should include the detailed, written statement of a multidisciplinary team that summarizes a child's abilities, outlines the child's educational goals, and specifies the services the child will receive. *Id.* at 187 (quoting *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 173 (3d Cir. 1988)).

In New Jersey, once a student is deemed eligible for special education and related services, the local education agency must develop an IEP which establishes the rationale for a student's educational placement and serves as the basis for program implementation. N.J. Admin. Code § 6A:14-1.3. In a typical due process hearing before an administrative law judge, the school district has the burden to prove by a preponderance of the credible evidence that the proposed IEP was proper, and the child was provided a FAPE. N.J. Stat. Ann. § 18A:46-1.1; N.J. Admin. Code § 1:6A-14.1(d); *see Lascari v. Ramapo Indian Hills Reg'l Sch. Dist.*, 560 A.2d 1180, 1188 (N.J.

1989); *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 391 (3d Cir. 2006). In rebutting a claim that a school district failed to implement an IEP, the school district must show that any deviations from the IEP were not substantial or significant failures, such that the child was not denied a meaningful educational benefit. *Melissa S.*, 183 F. App'x at 187 (citing *Houston Indep. Sch. Dist. V. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000)). School districts maintain flexibility to implement an IEP, yet the school district is accountable for "confer[ring] some educational benefit upon the handicapped child," as required by the IDEA. *Melissa S.*, 183 F. App'x at 187 (alteration in original) (quoting *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000) (quoting *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 188-89 (1982))).

In the proceedings before ALJ Testa, Plaintiffs asserted the following deviations from M.W.'s IEP ultimately deprived him of a FAPE: (1) at times there were more than three questions on M.W.'s assignment pages (ALJ Final Decision at 10); (2) teachers did not provide quarterly progress reports (*id.*); (3) certain online programs were not modifiable (*id.*); (4) M.W.'s IEP was posted on the Realtime System portal for anyone to view (*id.* at 6); (5) M.W.'s teachers used "teacher created checklists" to track his interactions with peers (*id.* at 10); (6) M.W.'s one-to-one aide was not always being utilized in the classroom[8] (*id.* at 9); and (7) Defendant deviated from M.W.'s IEP protocol in how it addressed an incident in which M.W. drew a pixel gun (*id.* at 5, 10).

ALJ Testa addressed the deviations from M.W.'s IEP. She explained that M.W.'s teachers testified that he had no issues completing the number of questions in excess of three; furthermore, his teachers were always available to guide him. (*Id.* at 13.) Regarding the lack of quarterly reports,

---

[8] G.W. testified that he believed there was no one-to-one aide being utilized during virtual instruction. (ALJ Final Decision at 9.) However, G.W. and K.W. declined to have a one-to-one aide for M.W.'s virtual instruction. (*Id.*) Use of a one-to-one aide was not a provision of M.W.'s IEP. (*Id.*)

ALJ Testa explained that the teachers' testimony noted that "Petitioners had demanded that the IEP not be available in the Realtime system. As such, the teachers could not utilize the Progress Reporting System. While this does not alleviate the District's responsibility from reporting the progress, it was a minor deviation from the overall requirements of the IEP." (*Id.* at 14.) Furthermore, M.W.'s teachers communicated with his parents daily and regularly informed them of M.W.'s progress. (*Id.*) ALJ Testa found that the instances of increased questions on assignments, lack of quarterly progress reports, and inability to modify certain online programs were all deviations well within the allowable "flexibility" in implementing an IEP. (*Id.*) Furthermore, ALJ Testa noted that even if Defendant's response to M.W.'s drawing of a pixel gun did not conform with the October 4th IEP, the response was appropriate given the severity of the situation. (*Id.* at 10.) This Court agrees with ALJ Testa's findings and conclusions. *See Melissa S.*, 183 F. App'x at 188 (explaining that alleged math instruction above student's skill level and lack of homework assignments were *de minimis* failures to implement IEP); *S.W. v. Elizabeth Bd. of Educ.*, No. 21-11510, 2022 U.S. Dist. LEXIS 47495, at *18 (D.N.J. Mar. 17, 2022) (explaining deviations from IEP may be necessary when safety concerns are implicated).

ALJ Testa found that the inadvertent availability of a version M.W.'s IEP on the Realtime system following the crash was outside of Defendant's control and not a violation of M.W.'s IEP. (ALJ Final Decision at 10.) Based on the testimony of M.W.'s teachers, ALJ Testa found that a one-to-one aide was being used in M.W.'s classrooms, and the teacher created checklists were not being used. (*Id.* 9-10.) Thus, ALJ Testa found that here, Defendant did not deviate from M.W.'s IEP. (*Id.*) This Court gives due weight to these findings and agrees with ALJ Testa's conclusion that Defendant did not deviate from M.W.'s IEP in these instances.

ALJ Testa concluded that because Plaintiffs failed to show more than a *de minimis* failure to implement the October 4th IEP, there was no violation that rose to the level of a denial of a FAPE. (ALJ Final Decision at 15.) Moreover, no evidence was presented that showed M.W. was not making meaningful educational progress; M.W. had A's or grades in the nineties in all his classes. (*Id.*) This Court agrees that M.W. has not been denied a FAPE since Defendant implemented substantial and significant portions of M.W.'s IEP, and M.W. is making meaningful progress. *See Melissa S.*, 183 F. App'x at 187 ("To prevail on a claim that a school district failed to implement an IEP, a plaintiff must show that the school failed to implement substantial or significant provisions of the IEP, as opposed to a mere *de minimis* failure, such that the disabled child was denied a meaningful educational benefit.").

## IV.     CONCLUSION

For the reasons set forth above, the Defendant's Motion is **GRANTED**, and the ALJ's Final Decision is **AFFIRMED**. An appropriate order follows.

*/s/  Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:        Clerk
cc:          Cathy L. Waldor, U.S.M.J.
             Parties

11